IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MICHELLE SHORES, et al., | ) | CIVIL NO. 22-00520 JAO-WRP |
| | ) | |
| Plaintiffs, | ) | ORDER DENYING PLAINTIFFS' |
| | ) | MOTION FOR PRELIMINARY |
| vs. | ) | INJUNCTION AND TEMPORARY |
| | ) | RESTRAINING ORDER |
| KEITH HAYASHI, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION AND TEMPORARY RESTRAINING ORDER**

Plaintiffs Michelle Shores and Dane Shores, individually and on behalf of their son, B.S., bring this action against Keith Hayashi in his official capacity as Superintendent of the State of Hawaiʻi Department of Education ("DOE") and Elizabeth A. Char, M.D., in her official capacity as Director of the State of Hawaiʻi Department of Health ("DOH"), alleging violations of the Individuals with Disabilities Education Act ("IDEA"), the Rehabilitation Act of 1973, and 42 U.S.C. § 1983. ECF No. 1. After the parties stipulated to stay the proceedings, on May 1, 2023, Plaintiff filed a Motion for Preliminary Injunction and Temporary Restraining Order ("TRO Motion"). ECF No. 21. For the following reasons, the Court DENIES the TRO Motion.

## I.     BACKGROUND

**A.  Factual History**

**1.     Allegations in the Complaint**

On December 27, 2022, Plaintiffs filed the Complaint alleging that B.S. became eligible at a young age for the services outlined under the IDEA.  ECF 1 at 4, ¶ 8.  He suffers from a panoply of conditions, the most serious of which is Reactive Attachment Disorder, which causes him to "engage in aggressive and self-injurious behaviors."  *Id*. at 5, ¶ 9.  He has an Individualized Education Plan ("IEP"), which is managed by DOE, and DOE in turn contracts with DOH to provide necessary mental health services.  *Id*. ¶ 10.

Because of the severity of B.S.'s condition and resulting behavior, his IEP team decided that he needed specialized out-of-state treatment, and so he was placed in facilities in Indiana, Michigan, Kansas, and Texas between 2017 and 2022.  *Id*. ¶ 12.  Beginning in June 2022, however, B.S. was removed to "hospital settings that are not appropriate placements and have not provided any educational services to which B.S. is entitled."  *Id*. at 6, ¶ 14.  Plaintiffs objected to such decisions, and had "a due process hearing in which the hearing officer ruled, in essence, that because B.S. was 'too sick' to benefit from his education the Defendants had not violated any of his rights."  *Id*. ¶ 15.

When the Complaint was filed, B.S. was in a foster home on the Island of

Hawaiʻi, living with foster parents who did not have the requisite experience to

care for him.  *Id*. ¶ 16.  Because of this, "B.S. and his caretakers [were] at great

risk of harm due to the aggressive, threatening, and self-abusive and other

behaviors that B.S. regularly engage[d] in due to his diagnosed and persistent

mental health conditions."  *Id*. 17.

    **2.**    **Allegations in the TRO Motion**

In a declaration attached to the TRO Motion, Plaintiffs' counsel Eric A.

Seitz offers additional information relevant here.  ECF No. 21-1.  Specifically, the

DOE contracts with DOH's Child and Adolescent Division ("CAD") as a member

of B.S.'s IEP team to provide him with necessary mental health services.  *Id*. at 2, ¶

6.  In February 2020, CAD unilaterally moved B.S. from a residential program on

the mainland and brought him back to Hawaiʻi without approval of his IEP team.

*Id*. at 3, ¶ 9.  He was then transferred to a suitable program in Kansas in May 2020.

*Id*. ¶ 10.  A year-and-a-half later, the Kansas program notified CAD and Plaintiffs

that it could no longer meet B.S.'s needs.  *Id*. ¶ 11.

Then, over the course of several months, B.S. lived at two different facilities

in Texas, neither of which were able to treat him for a sustained period of time due

to his violent and assaultive behavior toward himself and others, which included,

among other thing, throwing urine at a staff member, *Id*. at 4, tearing panels off a

3

wall and using them to assault another staff member, ECF No. 21-2 at 5, and breaking a window and ingesting two shards of glass after threatening to harm people with the glass, *id*.   He was arrested for the urine-throwing incident, processed through a Texas jail, and dropped off at a homeless shelter without notice to Plaintiffs or the Hawaiʻi agencies working with them.   ECF No. 21-1 at 4. He was eventually transported to the Hawaiʻi island foster home in late 2022.  *Id*. at 5, ¶ 17.

Within two weeks of arriving at the foster home, B.S. escaped, repeatedly harmed himself, and was hospitalized at Hilo Hospital for three months because his foster family would not agree to his return.  *Id*. ¶ 18.

On March 22, 2023, the parties agreed to employ Dr. Barry Carlton, who works at the University of Hawaii's John A. Burns School of Medicine, to conduct a comprehensive psychiatric evaluation of B.S., and to use his conclusions to determine an appropriate placement for B.S.  *Id*. ¶ 19.  To date, no such evaluation has taken place, and on March 24, 2023, CAD placed B.S. in a transitional program on Oʻahu ("the transitional program" or "the current facility"), where he again escaped "and was exposed to serious harm."  *Id*. at 5–6, ¶¶ 20–21.  But he was apparently returned to the transitional program because CAD informed Plaintiffs that, on May 3, 2023, when B.S. turns eighteen, he will be discharged from that program.  *Id*. at 6, ¶ 23.

CAD notified Plaintiffs that they were looking at two alternative placements for CAD once he leaves the transitional program, but Mr. and Mrs. Shores rejected at least one of them "because it is essentially a residence for homeless people that will provide no treatment or supervision for B.S." *Id*. at ¶ 24. On April 18, 2023, the state family court appointed Mr. Shores as B.S.'s guardian, determining that B.S. cannot make decisions for himself when he turns eighteen. *Id*. at 7, ¶ 28.

**B.    Procedural History**

On March 11, 2020, a hearings officer granted a stay put motion for B.S., indicating that B.S. "shall remain in his current educational placement at a private residential facility during the pendency of these proceedings." ECF No. 21-5 at 3. More than two years later, on December 2, 2022, the same hearings officer determined that DOE was not required to place B.S. in a therapeutic residential treatment facility as "DOE [was] not responsible for the treatment of [his] medical needs[,]" and Mr. and Mrs. Shores had not established that the failure to provide B.S. with educational services "resulted in a loss of educational opportunity" because "it [was] unclear whether [B.S.] [was] able to benefit from any kind of educational services before being medically stabilized." ECF No. 21-4 at 12.

Less than a month later, Plaintiffs filed the Complaint in this matter, which does not allege any errors in that decision. Rather, Plaintiffs assert standalone claims that both Defendants violated B.S.'s rights under the IDEA and

Rehabilitation Act.  ECF No. 1 at 7, ¶ 20.  Although not laid out in a separate cause of action, Plaintiffs also assert Defendants violated their due process rights protected under the U.S. Constitution, the Hawaiʻi state constitution, and 42 U.S.C. § 1983.  *Id.* ¶ 21.

On March 3, 2023, Defendant Hayashi moved to dismiss the Complaint. ECF No. 10.  The Court set a hearing on the motion for May 4, 2023.  ECF No. 13. But on March 23, 2023, and before Plaintiffs filed a response to the motion to dismiss, the parties stipulated to stay the proceedings to allow for the evaluation by Dr. Carlton.  ECF No. 18.  That stipulation indicated that either party could move to lift the stay "after the evaluation is completed[.]"  *Id.* at 18.

On May 1, 2023, Plaintiffs filed the TRO Motion, accompanied by a four-page memorandum, asking the Court to issue a temporary restraining order ("TRO"), followed by a preliminary injunction, requiring Defendants to keep B.S. at his current facility until Dr. Carlton could evaluate him.  ECF NO. 21-7 at 4. The Court held a status conference on May 2, 2023, during which it asked Plaintiffs for additional briefing.  ECF No. 23.  Plaintiffs filed their 5-page supplemental brief, which did not address the questions the Court asked them to answer.  ECF No. 24.  Thereafter, Defendant Char notified the Court that B.S. has been accepted for placement at the RYSE facility after 1:00 p.m. on May 3, 2023, subject to consent by a legal guardian.  ECF No. 25.  Notably, Plaintiffs sent an

email to the Court supplementing its supplemental brief, but the contents of that email were not properly filed and so the Court will not consider it.  *See* LR7.6 ("Absent extenuating circumstances, the court will not consider the submission of any supplemental authority that was available at the time of the filing of the party's last brief."); *Privratsky v. Liberty Mut. Fire Ins. Co*., No. 21-CV-00390-DKW-KJM, 2022 WL 15471174, at *4 (D. Haw. Oct. 27, 2022) ("[T]he parties should <u>only</u> email the Court's orders inbox when specifically instructed to do so or when submitting orders and/or stipulations for approval."  (emphasis in original)).

## II.   LEGAL STANDARDS

FRCP 65(a) allows courts to issue preliminary injunctions.  "[The] purpose of a preliminary injunction . . . is to preserve the status quo and the rights of the parties until a final judgment issues in the cause."  *Ramos v. Wolf*, 975 F.3d 872, 887 (9th Cir. 2020) (alterations in original) (internal quotation marks and citation omitted).  Injunctive relief is, however, "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief"; it is "never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 24 (2008) (citations omitted).  (citations omitted).  "[C]ourts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief,'" and should be particularly

mindful, in exercising their sound discretion, of the "public consequences in employing the extraordinary remedy of injunction."  *Id.* at 24 (citations omitted).

The standards governing a TRO and preliminary injunctions are "substantially identical."  *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (citation omitted); *see Kaiser Found. Health Plan, Inc. v. Queen's Med. Ctr., Inc.*, 423 F. Supp. 3d 947, 951 n.1 (D. Haw. 2019).  To obtain preliminary injunctive relief, a plaintiff must establish:  (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in favor of the plaintiff, and (4) an injunction is in the public interest.  *See* Winter, 555 U.S. at 20 (citations omitted).

The Ninth Circuit employs a "sliding scale" approach to preliminary injunctions, under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  One version of the sliding scale approach, the "serious questions" approach, permits the issuance of a preliminary injunction when there are "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.* at 1135; *see also id*. at 1134–35 ("[W]e join the Seventh and the Second Circuits in concluding

that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after the Supreme Court's decision in *Winter*."). So if a plaintiff establishes that "the balance of hardships tips decidedly in its favor, the likelihood-of-success prong of the preliminary injunction inquiry focuses on whether the plaintiff has raised 'serious questions going to the merits.'" *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1191 (9th Cir. 2022) (quoting *Alliance for the Wild Rockies*, 632 F.3d at 1131).

Here, Plaintiffs have not provided the Court with sufficient bases upon which to conclude that the temporary restraining order should issue. The TRO Motion and its supplement do not offer any significant, helpful, or meaningful discussion as to any of the *Winter* elements. As such, the Court is not persuaded that it should issue the requested TRO.

## III. DISCUSSION

Plaintiffs contend that "[t]o obtain interim injunctive relief a plaintiff must show either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions on the merits are raised and the balance of hardships tips sharply in [P]laintiffs' favor." ECF No. 21-7 at 2 (quoting *Alaska v. Native Vill. of Ventie*, 856 F.2d 1384, 1389 (9th Cir. 1988); *Life of the Land v. Ariyoshi*, 59 Haw. 156, 158 (1978). But Plaintiffs do not explain which standard entitles them to injunctive relief here. Indeed, they do not offer

9

any arguments on:  (1) their probability of success on the merits; or (2) whether there are serious questions on the merits, and (3) whether the balance of hardships tips sharply in their favor.  Plaintiffs also say nothing about how the public's interest would be affected by the proposed injunction and the public interest.

The only *Winter* element Plaintiffs discuss is "irreparable injury."  Plaintiffs argue:

> Because the rights at issue herein are so basic to our society their threatened or continued deprivation typically can be addressed through equitable relief.  The deprivation of such rights, "even for minimal periods of time," is by definition irreparable.  *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Gutierez v. Municipal Court of S.E. Judicial District*, 838 F.2d 1031, 1045 (9th Cir. 1988); *Associated General Contractors, Inc. v. City and County of San Francisco*, 748 F. Supp. 1443, 1447 (N.D. Cal. 1990).

ECF No. 21-7 at 3.  In support of this argument, Plaintiffs contends that "B.S. is a disabled person whose rights are clearly set forth in applicable federal laws including the Rehabilitation Act of 1973, the Individuals with Disabilities Act, and 42 U.S.C. Section 1983, et seq."  *Id*.  Plaintiffs also assert that "B.S. has an IEP that requires him to be placed and treated in a residential program due to the severity of his diagnosed mental health conditions."  *Id*.  But Plaintiffs fail to allege what the actual irreparable harm is in this case.

In *Elrod v. Burns*, cited by Plaintiffs, the court held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  427 U.S. 347, 373 (1976).  *See also Monterey*

10

*Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997) ("An alleged constitutional infringement will often alone constitute irreparable harm." (quoting *Associated Gen. Contractors v. Coal. For Econ. Equity*, 950 F.2d, 1401, 1412 (9th Cir. 1991)). Here, Plaintiffs fail to allege of which constitutional right B.S. will be deprived if the Court does not issue an injunction. The Court is left to conjecture if the alleged irreparable harm is a deprivation of some constitutional right or some other harm. The Court may not issue an injunction based "only on a possibility of irreparable harm." *Winter*, 555 U.S. at 22.

Moreover, the fact that Plaintiffs could have brought the TRO motion earlier, but instead sought a TRO at the eleventh hour, giving Defendants no real opportunity to respond, discredits their argument that irreparable injury will result if this Court does not issue this injunction. *See* ECF No. 21-6 at 1 (Plaintiffs' counsel's April 24, 2023 email asking, "Where is B.S. going on May 3? . . . I will now prepare to file for injunctive relief.").

"[I]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). Plaintiffs' TRO Motion falls well below this "clear showing" standard. The bare assertions presented to the Court are insufficient to grant the extraordinary remedy Plaintiffs seek. While B.S.'s situation is beyond tragic, the Court cannot simply grant

restraining orders based on sympathetic facts; the rule of law must be followed and the Court cannot put its thumb on the scale simply because it might wish it could.

CONCLUSION

For the foregoing reasons, the Motion for Preliminary Injunction and Temporary Restraining Order is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, May 3, 2023.

Jill A. Otake
United States District Judge

CIVIL NO. 22-00520 JAO-WRP; *Shores v. Hayashi*, ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER